OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Chavis et al., Appellants, v. Sycamore City
School District Board of Education, Appellee.
[Cite as State ex rel. Chavis v. Sycamore City School Dist. Bd.
of Edn. (1994),        Ohio St.3d           .]
Schools -- Tutors employed under individual tutor contracts
     performing learning disabled and English as a second
     language tutoring services -- Mandamus to compel board of
     education to pay tutors difference between their actual
     pay as tutors and the pay set forth in collective
     bargaining agreements' teachers' salary schedules -- Court
     errs in denying writ, when.
     (No. 94-557 -- Submitted September 20, 1994 -- Decided
November 23, 1994.)
     Appeal from the Court of Appeals for Hamilton County, No.
C-920906.
     Relators-appellants are fourteen individuals employed as
tutors by respondent-appellee, Sycamore City School District
(a.k.a. Sycamore Community School District) Board of Education
("board"), at various times during the 1986-1987 through
1990-1991 school years.  Eleven of the appellants provided
supplemental instruction to learning disabled ("LD") students
and the three remaining appellants provided supplemental
instruction in English as a second language ("ESL").  All of
the fourteen appellants held valid teaching certificates when
they performed tutorial duties for the board in the pertinent
time period.
     Appellants were employed under individual "tutor"
contracts in which they agreed to perform LD and ESL "tutoring
services" on an "as needed basis" at an hourly rate of pay.
The tutors' salary schedules set a flat hourly rate for school
years 1986-1987 through 1988-1989 and included increases in the
hourly rates based on years of service for school years
1989-1990 and 1990-1991.  The tutors' salary schedules did not
provide for increments based upon training and were not filed
with the Superintendent of Public Instruction pursuant to R.C.
3317.14.  During school years 1986-1987 through 1990-1991, the
board made contributions to the State Teachers Retirement
System ("STRS") on behalf of each of the appellants, based on

wages paid to them as LD and ESL tutors.  Funds under R.C. Chapter 3317, the School Foundation Program, were paid to STRS by the Ohio Department of Education on behalf of the board.

During the same period in which appellants were employed under LD and ESL "tutor" contracts, the board entered into several collective bargaining agreements with the Sycamore Education Association, the exclusive collective bargaining agent for all board employees with "teacher" contracts.  The collective bargaining agreements in effect during school years 1986-1987 through 1990-1991 covered all persons "employed as teachers by the Board *** excluding *** all hourly paid employees[.]"  As the parties all concede, since appellants were hourly paid employees when they were employed under the LD and ESL "tutor" contracts, they were not included within the bargaining unit, were not represented by the union, and were not covered by the agreements.  The teachers' salary schedules in the collective bargaining agreements included increments based upon training and years of service.  Although the board does not know whether the teachers' salary schedules were filed with the Superintendent of Public Instruction pursuant to R.C. 3317.14, it submitted the schedules to the Ohio Department of Education for school years 1986-1987 through 1990-1991.  The collective bargaining agreements also contained a grievance and arbitration procedure.

During school years 1986-1987 through 1990-1991, all appellants were paid in accordance with the tutors' salary schedules for duties performed under their "tutor" contracts and were not paid under either the teachers' salary schedules incorporated in the collective bargaining agreements covering this period or the R.C. 3317.13(C) minimum salary schedule for teachers for these duties.  In some of the school years in this period, appellants Jane Duncan, Noreen D. Eyre, Susan H. Ford, and Constance K. Weethee were also employed by the board as teachers expressly covered under the collective bargaining agreements and were paid the amounts set forth in the teachers' salary schedules.  However, these appellants were not given experience credit by the board on the teachers' salary schedules for past years of tutor service, and the union eventually filed a grievance on their behalf.

In the collective bargaining agreement effective beginning with the 1991-1992 school year, LD and ESL tutors, including appellants, were brought into the bargaining unit and a separate salary schedule was incorporated into the collective bargaining agreement, providing for lower annual salaries for tutors than other instructors.  Shortly following appellants' inclusion in the bargaining unit, they became aware of recent court decisions concerning tutors, and in June 1992, they demanded that the board properly compensate them for their tutoring for school years 1986-1987 through 1990-1991.  The board refused appellants' demand.

Appellants instituted a mandamus action in the Hamilton County Court of Appeals, seeking to compel the board to pay them the difference between their actual pay as tutors and the pay set forth in the collective bargaining agreements' teachers' salary schedules for school years 1986-1987 through 1990-1991.  Alternatively, appellants requested a writ compelling the board to pay the difference between their pay as

tutors and the amounts mandated in the R.C. 3317.13(C) teachers' minimum salary schedule. Appellants Duncan, Eyre, Ford, and Weethee requested payment of the additional amounts they would have received as classroom teachers if the board had credited their years of service as tutors in computing their salaries.

The parties submitted the matter to the court of appeals on motions for summary judgment limited to the liability issues. On January 26, 1994, the court of appeals granted the board's motion for summary judgment and denied appellants' petition for a writ of mandamus.

The cause is now before this court upon an appeal as of right.

Gary Moore Eby, for appellants.
Taft, Stettinius & Hollister and Robert J. Townsend, for appellee.

Per Curiam. The court of appeals granted the board's motion for summary judgment and denied the writ because it determined that the collective bargaining agreements' exclusion of appellants from coverage prevailed over any provisions of R.C. Chapters 3317 and 3319 containing more expansive definitions of the term "teacher" or establishing conflicting salary requirements. The court of appeals relied on R.C. 4117.10(A), which provides:

"An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. *** Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. *** [T]his chapter prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in this chapter or as otherwise specified by the general assembly. ***" (Emphasis added.)

R.C. 4117.10(A) was designed to free public employees from conflicting laws which may interfere with their right to collectively bargain. State ex rel. Rollins v. Cleveland Hts.-Univ. Hts. Bd. of Edn. (1988), 40 Ohio St.3d 123, 127, 532 N.E.2d 1289, 1293. "Except for laws specifically exempted, the provisions of a collective bargaining agreement entered into pursuant to R.C. Chapter 4117 prevail over conflicting laws." State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 513, 628 N.E.2d 1377, 1381; Streetsboro Edn. Assn. v. Streetsboro City School Dist. Bd. of Edn. (1994), 68 Ohio St.3d 288, 626 N.E.2d 110. A collective bargaining agreement does not prevail over conflicting laws where it either does not specifically cover certain matters, State ex rel. Clark v. Greater Cleveland Regional Transit Auth. (1990), 48 Ohio St.3d 19, 22, 548 N.E.2d 940, 943, or no collective bargaining agreement is in force. State ex rel. Internatl. Union of Operating Engineers v. Cleveland (1992), 62 Ohio St.3d 537, 584 N.E.2d 727.

Appellants, when employed as LD and ESL tutors during the

pertinent school years, were excluded from the applicable collective bargaining agreements because they were hourly paid employees.  Appellants were not members of the bargaining unit represented by the unions when the agreements were negotiated, executed, or in effect.  R.C. 4117.10(A) specifies that public employment collective bargaining agreements govern only the wages, hours, and terms and conditions "covered by the agreement."  Since appellants were not covered by the agreements, R.C. Chapters 3317 and 3319 governed appellants' employment conditions.  The court of appeals thus erred in concluding otherwise.

Appellants contend that a tutor is a "teacher" under R.C. 3319.09(A), a tutor is entitled to compensation according to the board's duly adopted pay schedule under R.C. 3317.14, and a tutor may obtain back pay by way of mandamus, citing State ex rel. Tavenner v. Indian Lake Local School Dist. Bd. of Edn. (1991), 62 Ohio St.3d 88, 578 N.E.2d 464, and State ex rel. Brown v. Milton-Union Exempted Village Bd. of Edn. (1988), 40 Ohio St.3d 21, 531 N.E.2d 1297.  The board asserts that tutors are not teachers for purposes of determining whether they are entitled to be paid under the teachers' salary schedule specified in R.C. 3317.13 and 3317.14.

In Brown and Tavenner, the court relied on the R.C. 3319.09(A) definition of "teacher."  R.C. 3319.09 provides:

"As used in sections 3319.08 to 3319.18, inclusive, of the Revised Code:

"(A) 'Teacher' means all persons certified to teach and who are employed in the public schools of this state as instructors, principals, supervisors, superintendents, or in any other educational position for which the state board of education requires certification including persons having a certificate issued pursuant to sections 3319.22 to 3319.31, inclusive, of the Revised Code, and employed in an educational position, as determined by the state board of education, under programs provided for by federal acts or regulations and financed in whole or in part from federal funds, but for which no certification requirements for the position can be made under the provisions of such federal acts or regulations." (Emphasis added.)

Although Brown and Tavenner utilized the R.C. 3319.09(A) definition of "teacher" for purposes of placement of tutors on the teachers' salary schedule required by R.C. 3317.13 and 3317.14, this definition "is expressly applicable only to teaching contracts and conditions of employment set forth in [R.C.] 3319.08 to 3319.18," the Teacher Tenure Act.  Buchter, Scriven & Sheeran, Baldwin's Ohio School Law (1993) 145, Section 8.02.  In that limited extent, we hold that Brown and Tavenner applied the incorrect statutory provision in their analyses.  R.C. 3317.13 provides a minimum salary schedule for teachers and contains its own definition of "teacher" in subsection (A)(2):

"'Teacher' means all teachers employed by school district boards of education ***."

While the R.C. 3317.13(A)(2) definition of "teacher" is somewhat circular, see Buchter, Scriven & Sheeran, supra, at 190, Section 10.02, fn. 11, R.C. 3317.13 and 3317.14 use the word in its ordinary sense, not as a term of art.  Wood v.

Trotwood Madison Bd. of Edn. (June 12, 1990), Montgomery App. No. CA 11836, unreported. Words used in a statute must be taken in their usual, normal or customary meaning. R.C. 1.42; State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 220, 631 N.E.2d 150, 153. A "teacher" is "[o]ne who teaches or instructs," and a "tutor" is "[o]ne who teaches, usually a private instructor." Black's Law Dictionary (6 Ed.1990) 1463 and 1518. The evidence in the record is uncontroverted that appellants, when employed as LD and ESL tutors, provided instruction to students and were employed by the board. Therefore, appellants were teachers for purposes of the statutes relating to teacher salaries, R.C. 3317.13 and 3317.14.

Nevertheless, R.C. 3317.13(A)(2) must be read in conjunction with R.C. 3319.30, which provides that "no person shall receive any compensation for the performance of duties as teacher in any school supported wholly or in part by the state or federal funds who has not obtained a certificate of qualification for the position as provided for by section 3319.22 of the Revised Code and which certificate shall further certify to the good moral character of the holder thereof. ***" The board admitted that thirteen of the fourteen appellants held valid teaching certificates during the relevant school years.

The board contends that Judith J. Pryor, an ESL tutor, is not entitled to any back pay because her teaching certificate does not include certification for teaching English to speakers of other languages. The board relies on Ohio Adm. Code Section 3301-23-21, which states in pertinent part:

"*** [T]eaching validations may be approved for grade levels set forth in rules 3301-23-01 to 3301-23-07 of the Administrative Code and for the following:

"***

"(F) Teaching English to speakers of other languages ***." (Emphasis added.)

However, R.C. 3319.30 requires only a "certificate of qualification for the position as provided for by section 3319.22 of the Revised Code" and a certification of the "good moral character of the holder" in order to avoid denial of compensation. See, generally, Whitley v. Canton City School Dist. Bd. of Edn. (1988), 38 Ohio St.3d 300, 528 N.E.2d 167. R.C. 3319.22 provides that teachers' certificates may be issued in several different types, including:

"(B) Elementary, valid for teaching in grades one to eight;

"(C) Middle grades, valid for teaching the subjects named in such certificate in grades four to nine;

"(D) High school, valid for teaching the subjects named in such certificate in grades seven to twelve[.]"

While the board contended below that appellant Pryor never held any valid teaching certificate for the 1989-1990 school year, it now concedes that the evidence established that she did possess a teaching certificate. The uncontroverted evidence shows that appellant Pryor held an elementary teaching certificate, valid for teaching in grades one through eight during the relevant period. The certificate contained the additional certification that she was of good moral character and that she had satisfactorily completed the minimum

requirements prescribed by the State Board of Education.

Since appellant Pryor was properly certified under R.C. 3319.22(B), her elementary teaching certificate, unlike those for middle grades or high school as specified in R.C. 3319.22(C) and (D), was valid for teaching in grades one through eight without limitation as to subject matter. See, e.g., Fisler v. Mayfield City School Dist. Bd. of Edn. (Oct. 31, 1985), Cuyahoga App. No. 49548, unreported. The board did not present any competent factual evidence to rebut appellants' evidence that Pryor was properly certified under R.C. 3319.22(B), e.g., there was no evidence that appellant Pryor taught in other grades besides one through eight during the pertinent school year. Further, the board's summary contention on appeal is limited to Ohio Adm. Code 3301-23-21(F)'s validation procedure, and does not mention R.C. 3319.22(B)'s provision for elementary certification, which allows the holder to teach in the stated grades without requiring additional certification in specific subjects. Under these circumstances, appellant Pryor was properly certified in order to entitle her to be compensated as an ESL tutor. Therefore, all appellants were "teachers" for purposes of R.C. 3317.13 and 3317.14 and were not barred by R.C. 3319.30 from compensation for their duties as tutors.

"Generally, an hourly rate [for tutors] which is agreed upon in collective bargaining, and incorporated in the collective bargaining agreement, may be less than the rate of compensation provided by the salary schedule. If, however, there is no separate pay rate for tutors set forth in the agreement, or if the tutors in question are not members of the bargaining unit, the tutors are subject to [Brown] and must be paid 'in accordance with' the [board's duly adopted teachers' salary] schedule." 1 Baker, Ohio School Law (1993) 334, Section 7.44.1; see, also, Brown and Tavenner, supra. Since appellants were not members of the collective bargaining unit nor covered by the agreements when they were employed as LD and ESL tutors, they must be paid in accordance with the board's teachers' salary schedules for the subject school years. The board asserts that since the teachers' salary schedules were adopted as a result of collective bargaining rather than under R.C. 3317.14, appellants are not entitled to the difference between what they would have earned under the agreements and what they were paid as tutors, but are entitled, at most, only to the difference between the R.C. 3317.13(C) minimum teachers' salary schedule amounts and the sums they were paid.

R.C. 3317.14 states:

"Any board of education participating in funds distributed under Chapter 3317. of the Revised Code shall annually adopt a teachers' salary schedule with provision for increments based upon training and years of service. ***

"On the fifteenth day of October of each year the salary schedule in effect on that date in each school district shall be filed with the superintendent of public instruction. A copy of such schedule shall also annually be filed by the board of education of each local school district with the county superintendent of schools, who thereupon shall certify to the treasurer of such local district the correct salary to be paid to each teacher in accordance with the adopted schedule."

The board participated in funds distributed under R.C. Chapter 3317, the school foundation program, since it admitted that during the school years at issue, R.C. Chapter 3317 funds were paid on its behalf by the Ohio Department of Education to STRS. The teachers' salary schedules adopted by the board and incorporated in the collective bargaining agreements were the only schedules containing provisions for "increments based upon training and years of service" as required by R.C. 3317.14. Although the board indicated it did not know if the schedules were filed with the Superintendent of Public Instruction as also required by R.C. 3317.14, they were filed with the Department of Education.

The foregoing evidence establishes that the teachers' salary schedules contained in the collective bargaining agreements were filed and adopted in substantial compliance with R.C. 3317.14. Therefore, appellants possessed a statutory right to be paid in accordance with those schedules during school years 1986-1987 through 1990-1991. The fact that the schedules were also contained in the collective bargaining agreements from which appellants were excluded does not vitiate this result, since appellants' claim is premised on R.C. 3317.14 rather than the agreements. Appellants thus have a clear legal right to the difference between the amounts they were paid as tutors and the amounts they should have been paid under the board's duly adopted teachers' salary schedule. The board has a corresponding legal duty to pay this compensation.

The board contends that even if the court of appeals' rationale was erroneous, its judgment denying appellants' complaint for a writ of mandamus was proper because appellants had various adequate remedies at law. A writ of mandamus will not be issued when there is a plain and adequate remedy in the ordinary course of the law. R.C. 2731.05. In order for an alternate remedy to be considered adequate, the remedy must be complete, beneficial, and speedy. See, e.g., State ex rel. Horwitz v. Cuyahoga Cty. Court of Common Pleas, Probate Div. (1992), 65 Ohio St.3d 323, 328, 603 N.E.2d 1005, 1009. The board claims that appellants had several adequate remedies, including a complaint to the superintendent under R.C. 3317.13(B), declaratory judgment, a contest to their exclusion from the bargaining unit, and the grievance and arbitration procedure set forth in the collective bargaining agreements.

R.C. 3317.13(B) provides in part:

"Upon written complaint to the superintendent of public instruction that the board of education of a district has failed or refused to annually adopt a salary schedule or to pay salaries in accordance with the salary schedule set forth in division (C) of this section, the superintendent of public instruction shall cause to be made an immediate investigation of such complaint. If the superintendent finds that the conditions complained of exist, he shall order the board to correct such conditions within ten days from the date of the finding. No moneys shall be distributed to the district under this chapter until the superintendent has satisfactory evidence of the board of education's full compliance with such order."

In State ex rel. Tavenner v. Indian Lake Local School Dist. Bd. of Edn. (May 16, 1990), Logan App. No. 8-90-3, unreported, affirmed in part and reversed in part on other

grounds in Tavenner, supra, 62 Ohio St.3d 88, 578 N.E.2d 464, the appellate court rejected a similar argument:

"In this regard, we note that R.C. 3317.13(B) provides only for an investigation of either (1) a failure or refusal to adopt an annual salary schedule or (2) a failure to pay salaries in accordance with the state minimum salary schedule. However, the instant claim does not concern either subject contained in R.C. 3317.13(B). Instead, we are concerned with respondents' failure to pay relator in accordance with the district's adopted Teachers' Salary Schedule. Therefore we do not find the statute to provide a plain and adequate remedy at law. "

Similarly, neither declaratory judgment nor the right to contest the bargaining unit is an adequate legal remedy. A declaratory judgment would not provide back pay and would not be complete without a mandatory injunction. See, e.g., State ex rel. Kmart Corp. v. Westlake Planning Comm. (1994), 68 Ohio St.3d 151, 158, 624 N.E.2d 714, 720; State ex rel. Fenske v. McGovern (1984), 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraph two of the syllabus. A contest to the composition of the bargaining unit would not have necessarily resulted in "complete relief," since the tutors would not then have to be compensated pursuant to the same salary schedule, and appellants' claims for relief arose subsequent to the 1985 certification of the bargaining unit. It is well settled that a claim by a public employee of entitlement to wages or benefits which are granted by statute is actionable in mandamus. State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn. (1989), 42 Ohio St.3d 86, 88, 537 N.E.2d 646, 647; State ex rel. Gingrich v. Fairfield City School Dist. Bd. of Edn. (1985), 18 Ohio St.3d 244, 245, 18 OBR 300, 301, 480 N.E.2d 485, 486.

Appellants' complaint also contained a claim by appellants Duncan, Eyre, Ford, and Weethee for payments of additional amounts they would have received if the board had credited their years of service as tutors in computing their salaries as teachers under the collective bargaining agreement. These appellants were covered under the collective bargaining agreements and were paid amounts provided in the teachers' salary schedules. They filed a grievance concerning the matter and it was set for arbitration. The grievance and arbitration procedures were complete, beneficial, and speedy as to this claim. "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." Cassels, supra, 69 Ohio St.3d at 222, 631 N.E.2d at 154. Accordingly, the court of appeals did not err in granting the board's motion for summary judgment and denying a writ of mandamus as to appellants Duncan, Eyre, Ford, and Weethee's claims regarding their teachers' salaries.

Finally, the board asserts that the court of appeals properly denied appellants' request for mandamus relief because of equitable estoppel, laches, and waiver. Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment. Madden, supra, 42 Ohio St.3d at 90, 537 N.E.2d at 649. The doctrine of equitable estoppel generally requires actual or constructive

fraud.  State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund (1994), 69 Ohio St.3d 409, 414, 632 N.E.2d 1292, 1296.  Contrary to the argument of the board, there is no evidence that appellants, either intentionally or through culpable negligence, misled the board by continuing to accept tutors' compensation following this court's December 1988 decision in Brown.  Appellants' affidavits indicated that they were unaware of their rights under Brown and Tavenner prior to their inclusion in the bargaining unit for the 1991-1992 school year, and never made any misrepresentations to the board.  The board's estoppel defense lacks merit.

"The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." State ex rel. Cater v. N. Olmsted (1994), 69 Ohio St.3d 315, 325, 631 N.E.2d 1048, 1056.  There is no evidence that the board's ability to defend against appellants' mandamus suit was prejudiced by the delay.  Prejudice will not be inferred from a mere lapse of time.  Madden, supra, 42 Ohio St.3d at 91, 537 N.E.2d at 650.

The board's waiver argument is also meritless.  Waiver is a voluntary relinquishment of a known right.  Id. at 89, 537 N.E.2d at 648.  Brown rejected a similar argument that acceptance and performance of a tutorial service limited contract waived a right to a continuing contract.  Id., 40 Ohio St.3d at 27, 531 N.E.2d at 1303.  Subsequent appellate court opinions have also rejected waiver defenses in tutor back pay cases.  State ex rel. Fink v. Grandview Hts. City School Dist. Bd. of Edn. (May 12, 1994), Franklin App. No. 93APE10-1462, unreported; Cuyahoga Falls Edn. Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn. (Nov. 20, 1991), Summit App. No. 14962, unreported.

Accordingly, the court of appeals erred in failing to grant appellants a writ of mandamus compelling the board to pay them the difference between their pay as tutors and the pay set forth in the collective bargaining agreements' teachers' salary schedules for the period from 1986-1987 through 1990-1991. Since the damage and other issues, e.g., interest, have not yet been resolved, the court of appeals must address these issues on remand.  The summary judgment and denial of mandamus relief are affirmed as to appellants Duncan, Eyre, Ford, and Weethee's claim for increased compensation during the years they were covered by the collective bargaining agreements.

Judgment affirmed in part,
reversed in part
and cause remanded.

Moyer, C.J., A.W. Sweeney, Wright, Resnick and F.E. Sweeney, JJ., concur.

Douglas, J., concurs in judgment only.

Pfeifer, J., dissents and would affirm in toto.