DECISION AND JUDGMENT ENTRY
Appellants, Karen Kubacki, et al., appeal from a judgment of the Lucas County Court of Common Pleas. In its judgment, the trial court determined that the parties were bound by the tutor compensation provisions of the applicable collective bargaining agreements and dismissed appellants' mandamus action against appellee.
The facts of this case are as follows. Appellants were employed by appellee, Toledo City School District Board of Education ("Board of Education"), for one or more school calendar years from 1992 through 1998. Appellants all hold bachelor's degrees from accredited institutions and are certified to teach by the state of Ohio, Board of Education.
Appellants are or were employed by the Board of Education as learning disability tutors pursuant to a limited one-year contract. Appellants were paid on an hourly basis and worked the same number of days and hours as regular contract teachers.
At all times relevant to this action, appellants were represented by the Toledo Federation of Teachers ("TFT") as their collective bargaining representatives. The Board of Education and the TFT have been parties to three collective bargaining agreements during the relevant period.[1] Such agreements provide teacher and tutor compensation schedules. Appellants were paid according to the tutor compensation schedule.
On or about June 17, 1998, appellants filed a complaint for a writ of mandamus asking the trial court to order the Board of Education to pay appellants as regular contract teachers and requesting an award of back pay. Both parties filed motions for summary judgment, and on June 10, 1999, the trial court denied appellants' motion, granted appellee's motion and dismissed all the claims. Appellants then filed a timely notice of appeal with this court.
Appellants assert the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "THE LOWER COURT ERRED BY FAILING TO ADDRESS APPELLANTS' CLAIM THAT THEY DID NOT MEET THE DEFINITION OF A `TUTOR' AS THAT TERM IS DEFINED IN THE COLLECTIVE BARGAINING AGREEMENTS
"SECOND ASSIGNMENT OF ERROR
 "THE LOWER COURT ERRONEOUSLY INTERPRETED STATE EX REL. FLEMING v. ROCKY RIVER BOARD OF EDUCATION (1997), 79 Ohio St.3d 200 AND, THEREFORE, ERRED WHEN IT RELIED UPON THE CASE TO SUPPORT ITS DECISION GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT
"THIRD ASSIGNMENT OF ERROR
 "THE LOWER COURT ERRONEOUSLY FAILED TO THOROUGHLY ADDRESS APPELLANTS' CLAIM THAT THEY WERE ENTITLED TO LIMITED OR CONTINUING TEACHING CONTRACTS."
In their first assignment of error, appellants argue that in its Opinion and Judgment Entry, the trial court failed to address their argument that they were not "tutors" as defined in the collective bargaining agreement.
The disputed provisions of the agreements provide:
"IX. TUTORS AND HOURLY TEACHERS-SUBSTITUTE EMPLOYMENT RIGHTS
"Definitions
 "Hourly teachers are those employed on an hourly basis as teachers in hourly rated vocational programs, adult education, family life, day care centers or similar programs, who do not qualify for regular contract service because of certification deficiencies. Hourly teachers shall not be used to perform work which is normally performed by regular salaried day school teachers, nor shall they be used in adult programs where high school course credit is given. * * *.
 "Teachers in adult education programs where high school course credit is given and who possess a degree and full certification (not temporary) and who work full-time during the day are considered to be regular contract employees. Such teachers shall be extended regular contracts * * *.
 "Tutors are teachers in day school programs employed to supplement instruction and are paid the hourly rate, exclusive of after school home instructors and English Language Development Program instructors (ELDP). Tutors without degrees are members of the paraprofessional bargaining unit. * * *."
 Appellants argue that the only employees properly classified as "tutors" are those with certification deficiencies as set forth in paragraph one of Article IX. Appellees, on the other hand, contend that the reference to certification deficiencies pertains to miscellaneous hourly employees as described in paragraph one of Article IX, not tutors as described in paragraph three. This court agrees.
 "`Terms in a collective bargaining agreement shall be given their ordinary meaning in the absence of evidence indicating that the parties to the contract intended to expand or otherwise deviate from that meaning.'" Toledo Police Patrolman's Assn., Local 10, IUPA, AFL-CIO-CLC v. Toledo (1998), 127 Ohio App.3d 450, 462-463, quoting Detroit Coil v. Internatl. Assn. of Machinists Aerospace Workers, Lodge No. 82 (C.A.6 1979), 594 F.2d 575, 580. Paragraph three of Article IX plainly states that "[t]utors are teachers in day school programs employed to supplement instruction and are paid the hourly rate, * * *." Accordingly, the trial court's "implied" finding that appellants were tutors was not error. Appellants' first assignment of error is not well-taken.
In their second assignment of error, appellants argue that the trial court erred in its application of State ex rel.Fleming v. Rocky River Bd. of Edn. (1997), 79 Ohio St.3d 200. Citing Fleming and State ex rel. Burch v.Sheffield-Sheffield Lake City Sch. Dist. Bd. of Edn. (1996),75 Ohio St.3d 216, in its Opinion and Judgment Entry, the trial court stated that as members of a collective bargaining unit, appellants are bound by the compensation provisions.
In Fleming, the board had negotiated a salary schedule with classroom teachers. Tutors with valid teaching certificates were paid at a level less than classroom teachers. The tutors filed a writ of mandamus requiring that they be paid according to the same salary schedules as classroom teachers. The Supreme Court of Ohio affirmed the writ's denial stating that "the board could properly recognize differences in certification requirements and duties between tutors and classroom teachers and adopt different salary schedules for them." Id. at 204.
Appellants argue that because their hourly rates were not based upon training and years of experience as in Fleming, such rate should not be applied to them. We find this argument unpersuasive.
In Fleming, classroom teachers were paid according to a negotiated collective bargaining agreement which exceeded the statutory requirements. Unlike the facts in the instant case, inFleming there was no mention of a negotiated agreement between the board and tutors who were paid the statutory rate.
The provisions of a collective bargaining agreement entered into pursuant to R.C. Chapter 4117[2] prevail over conflicting laws. State ex rel. Burch v. Sheffield-SheffieldLake City School Dist. Bd. of Edn.,75 Ohio St.3d at 218, quoting State ex rel. Parsons v. Fleming
(1994), 68 Ohio St.3d 509, 513. Teachers' salary schedules under R.C. 3317.13 and 3317.14 are not exempted. Burch, citing State ex rel. Johnson v. Cleveland Hts./Univ. Hts.School Dist. Bd. of Edn. (1995), 73 Ohio St.3d 189, 192.
Based on the foregoing, we cannot say that the trial court's citation to Fleming, supra, while not exactly on point, was fatal to its decision. The trial court first cited to Burch in support of its proposition relative to collective bargaining agreements. The trial court referred toFleming only as additional support (in "see, also," format.) Accordingly, appellants' second assignment of error is not well-taken.
In their third and final assignment of error, appellants argue that the trial court erroneously failed to address appellants' claim that they were entitled to limited or continuing contracts. In their motion for summary judgment, appellants relied onBrown v. Milton-Union Exempted Village Bd. of Edn.
(1988), 40 Ohio St.3d 21, overruled in part by State ex rel.Chavis v. Sycamore City School Dist. Bd. of Edn. (1994),71 Ohio St.3d 26, which held that R.C. 3319.11, providing for continuing contracts under certain conditions, prevailed over the terms of the collective bargaining agreement because the March 1984 agreement was executed prior to the enactment of R.C.4117.10.[3]
The Brown court explained that R.C. 4117.10:
 "mandates, where a law conflicts with a wage, hour, or term or condition of employment provision found in a collective bargaining agreement entered into pursuant to R.C. Chapter 4117, the collective bargaining agreement prevails. Jurcisin v. Cuyahoga Cty. Bd. of Elections (1988), 35 Ohio St.3d 137, 143, 519 N.E.2d 347, 352-353. Provisions defining procedures for reemployment are clearly `terms or conditions of employment' provisions within the meaning of R.C. 4117.10. Thus, if R.C. 4117.10 were to be applied and this controversy were to be simply a conflict between Section 1, Article III and R.C. 3319.11, the Master Contract provision would certainly control."
Id. at 25.
In the instant case, we note that the one-year contracts extended to appellants were, by definition, limited contracts. See R.C. 3319.08(A)(3). The earliest agreement implicated became effective in 1992 and, unlike Brown, R.C. 4117.10
applies. Additionally, Richard C. Daoust, Deputy Superintendent of Toledo Public Schools, states in his March 1, 1999 affidavit that the collective bargaining agreement provides that the procedures for evaluation of teachers employed under limited contracts, their renewal or nonrenewal and reemployment of such teachers shall supersede R.C. 3319.11 and 3319.111. Daoust states that this provision appears in the 1992-1995, 1996-1997, and 1997-2000 agreements.
Upon review of the applicable statutory and case law, we find that appellants have presented no basis, which would entitle them, as tutors paid hourly, to continuing contract status. Accordingly, appellants' third assignment of error is not well-taken.
On consideration whereof we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J.,Mark L. Pietrykowski, J., CONCUR.
[1] The agreements applicable to this action were effective 1992-1995, 1996-1997, and 1997-2000.
[2] R.C. 4117.10(A) provides, in pertinent part:
 "An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. Laws pertaining to civil rights, affirmative action, unemployment compensation, workers' compensation, the retirement of public employees, and residency requirements, the minimum educational requirements contained in the Revised Code pertaining to public education including the requirement of a certificate by the fiscal officer of a school district pursuant to section 5705.41 of the Revised Code, the provisions of division (A) of section 124.34 of the Revised Code governing the disciplining of officers and employees who have been convicted of a felony, and the minimum standards promulgated by the state board of education pursuant to division (D) of section 3301.07 of the Revised Code prevail over conflicting provisions of agreements between employee organizations and public employers. * * *."
[3] The notes following the text of R.C. 4117.10 provide:
 "1983 S 133, § 3, eff. 10-6-83, reads, in part: Section 4117.10 of the Revised Code, as enacted by this act, shall take effect on the effective date of this act; however, divisions (A),(B), and (C) of that section shall not be applied to any facts occurring before April 1, 1984."